LINDSEY *v.* STATE.

4190                                    143 S. W. 2d 573

Opinion delivered October 14, 1940.

*Jameson & Jameson*, for appellant.

*Jack Holt*, Attorney General, and *Jno. P. Streepey*, Assistant Attorney General, for appellee.

SMITH, J. Ossie Langley, Charley Langley, Gerald Ralston and Claude Lindsey were jointly indicted and tried upon the charge of having robbed Mary Jane and Steve Jones. All were convicted and sentenced to the penitentiary, but only Claude Lindsey has appealed.

It appears that Ossie Langley and Gerald Ralston had signed written confessions, in which they admitted their guilt and detailed the circumstances under which the crime had been committed. These confessions were to the effect that the robbery was planned by the four persons charged with its commission; that appellant, Claude Lindsey, furnished the car and drove the party to the Jones home, but that appellant remained with the car while the others went to the Jones home and committed the robbery. These confessions were admitted in evidence over the objection and exception of appellant, Claude Lindsey.

A signed statement made by appellant was also admitted in evidence, to the effect that he was requested by Charley Langley to drive him and certain others from Fayetteville to Madison county. He said he had no gas for his car, but Ossie Langley and Gerald Ralston agreed to and did buy the gasoline. They drove beyond

St. Paul, in Madison county. It is further recited in this signed statement: "When we got to the place, Ossie told me to stop, and he got out. He asked me if I wasn't going with him and I told him that I didn't know anyone there and that I was going to stay in the car. He then asked Charley Langley and Gerald Ralston if they were going with him and they both got out of the car and went with him. The three were gone about an hour, when they came back and said that they had had some trouble. I asked Ossie what happened; and he told me that it didn't amount to much. I kept questioning him about it and he told me that he had been shot."

Appellant did not repudiate this statement in his testimony at his trial. His testimony was to the effect that the car was not driven to the Jones home, but near there; that he was not told, and did not know, what his associates proposed to do; that he was not told of their intention to commit a robbery, and did not know that they had done so until after the party had separated. He made no explanation of his lack of knowledge about the circumstances under which Langley was shot.

The court defined an accomplice, and told the jury that an accused person could not be convicted upon the uncorroborated testimony of an accomplice. In the same instruction, the court further charged the jury that "You are further instructed that a voluntary confession made to one who is not an accomplice is sufficient corroboration, and the confession here can be considered only by you as evidence against the one who made it."

There is no question that the robbery was committed. Mary Jane Jones, one of the persons robbed, testified that although the robbers were masked, she recognized Ossie and Charley Langley, who are her nephews, as being two of them.

Reversal of the judgment of conviction of appellant, Claude Lindsey, is asked upon two grounds: (a) that it was error, as to him, to admit the confessions of Ossie Langley and Gerald Ralston, and (b) that, without these confessions, the testimony is insufficient to sustain his conviction.

The confessions of Langley and Ralston were made after the completion of the criminal enterprise, and in the absence of appellant, and the law is definitely settled that where a crime is committed and the criminal enterprise of the conspirators has ended, the acts or declarations of one conspirator are thereafter inadmissible against his co-conspirators. *Hammond* v. *State,* 173 Ark. 674, 293 S. W. 714. But it must be remembered that the parties who made the confessions were also on trial, and the confessions were, of course, admissible against the parties who made them, and the jury was instructed that "The confessions here can be considered only by you as evidence against the one who made it."

It is argued that the jury could not consider the confessions for any purpose without considering them against appellant. But this does not necessarily follow. The jury was told to do so, and we perceive no reason why they may not have done it. The jury might well have asked, in their deliberations, and have answered the question, whether, aside from the confessions, there was evidence of appellant's participation in the crime. This they were required under the instructions to do before finding appellant guilty, and we conclude there was no error in the instruction. *Johnson* v. *United States,* 82 Fed. 2d 500; *State of New Jersey* v. *Dolbow,* 117 N. J. L. 560, 189 Atl. 915, 109 A. L. R. 1488.

But was there sufficient testimony to establish appellant's connection with the crime aside from the confessions? We think there was. By his own admission, appellant drove the parties, in his own car, to a point near the scene of the commission of the crime, and remained with the car for an hour or more while the crime was being committed. Driving to the Jones home, some thirty miles or more, was an act essential to the commission of the crime, and waiting—possibly watching—at the car may have been another, and the naive statement that Ossie Langley had been shot, and that "I kept questioning him about it and he told me he had been shot," lends strong support to the conclusion that appellant did not tell all he knew. Like the case of

one found in the possession of property recently stolen, which the thief does not explain, the jury here may have concluded that appellant had acquired too little information for the opportunities afforded, and have believed so much of his own statement as placed him near the scene of the crime, while disbelieving his denial that he knew the crime was being committed while he was waiting at the car. It was not essential that it be shown that appellant was present at the place of that actual commission of the crime. It is sufficient if he had conspired to commit it and had aided and abetted its commission by driving the robbers to the point where it could be and was committed, and we think the jury was warranted in finding that this was the only reasonable conclusion to be drawn from the facts herein recited.

The judgment, must, therefore, be affirmed, and it is so ordered.