## NOBLE *v.* STATE.

May 24, 1954

No. 39077 66 Adv. S. 27 72 So. 2d 687

*Geo. D. Maxey,* Ellisville; *William H. Odom,* Laurel, for appellant.

*Joe T. Patterson,* Asst. Atty. Gen., Jackson, for appellee.

Kyle, J.

The appellant, Isaac Ray Noble, was jointly indicted with William Alvin Wetzel at the February 1953 term of the Circuit Court of the Second Judicial District of Jones County on a charge of robbery with firearms. A severance was granted, and the appellant was tried and convicted and sentenced to serve a term of 30 years in the state penitentiary. From that judgment he prosecutes this appeal.

The testimony of the State witnesses showed that during the evening of December 16, 1952, between 5:30 and 6:00 o'clock, a stranger, "with sharp, mean-looking eyes set back in his head," and wearing a khaki jumper and a long billed cap with mesh sides, entered the Jitney Jungle grocery store on South Magnolia Street, in the City of Laurel, and at the point of a P-38 pistol ordered Henry M. Lindsey, Sr., the proprietor, to empty the cash registers and put the contents thereof in a paper bag. Lindsey complied with the order and with the gun still pointed toward him moved, as he was directed to do, toward the front door of the building. When Lindsey and the robber reached the front door of the building, the robber seized the bag and fled. Lindsey's son and his daughter-in-law and several customers were in the store and witnessed the bold robbery.

Lindsey and his son notified the police department and the sheriff's office immediately, and the officers arrived at the scene of the robbery within a few minutes.

After questioning the witnesses and obtaining a description of the person who had robbed Lindsey, the chief of police procured from the police department several pictures of known or suspected criminals and showed them to the witnesses. But the witnesses failed to identify any one of them as a picture of the person who had perpetrated the crime. On the following morning, however, the chief of police brought two other pictures to the store, and one of these was identified by Lindsey and his son and his daughter-in-law as a picture of the man who had committed the robbery.

In the meantime another clue which contributed to the prompt arrest of the guilty party was furnished by Glen Holifield, a deputy sheriff, who lived in his father's home on Ellisville Boulevard, about one block from Lindsey's Jitney Jungle store. Holifield had arrived at his father's home about 5:30 p. m., only a few minutes before the crime was committed, and as he was about to enter his father's house he observed a late model DeSoto automobile parked near the side entrance to the house. Two persons were seated in the car. They were wearing khaki or tan coats and plain caps with large-sized bills. Holifield turned and walked toward the car for the purpose of asking the occupants of the car whether they wished to see his father, who was sheriff of the county. The strangers, however, drove away immediately, and as the car left the deputy sheriff noticed that there was a Mississippi license tag on the car. The last three figures of the car tag number were "540."

After the robbery had been reported to the police department, radio broadcasts were made for the purpose of notifying the state highway patrol, the police departments of neighboring cities and the sheriffs' offices in neighboring counties. A description of the robber and also a description of the DeSoto automobile, with the last three car tag numbers, were given in the broadcasts; and on the day following the commission of the crime

the DeSoto automobile was picked up by police officers in the City of Biloxi. The driver of the car, who was later identified as Mrs. Burt Archer, was arrested; and a short time thereafter Wetzel and the appellant were found at a tourist court, on the beach road, a short distance west of the City of Biloxi, and were taken into custody. In the room occupied by them at the tourist court the officers found a set of keys, including a key to the DeSoto automobile, and three pistols. The chief of police of the City of Laurel was notified of the arrest of the two men; and he and Lindsey and Lindsey's son drove to Gulfport immediately. Wetzel was identified as the person who had robbed Lindsey, and he and the appellant were carried to Laurel and placed in jail.

The appellant two or three days later made a voluntary statement to the chief of police in which he admitted that he had accompanied Wetzel to the City of Laurel on the day of the robbery. He admitted that he and Wetzel were sitting in the car near the home of the sheriff of Jones County, when the sheriff's son approached the car, and that they drove away immediately and later parked their car on what appeared to be a parking lot nearby. He admitted that Wetzel left him in the car and returned a short time thereafter with a paper bag containing a large sum of money, and that Wetzel then directed him to drive the car back to Biloxi. The appellant admitted that he knew that Wetzel had a gun on him; but he denied knowing anything about Wetzel's intention to rob the Jitney Jungle grocery store.

The appellant told the chief of police that he had just been released from the penitentiary and that the DeSoto automobile in which he and Wetzel were riding belonged to his mother, who lived in the State of Texas; that his sister had purchased the car for his mother in the City of Jackson, Mississippi, and had failed to get the proper papers on the car; and that he had brought the car back to Mississippi in order that he might get the proper

papers on the car. He stated that Mrs. Burt Archer and Wetzel had accompanied him to Mississippi. The purpose of Mrs. Archer's visit was to try to make bond for her husband, who was being held as a prisoner in the Harrison County jail. The appellant stated that after their arrival on the Gulf Coast he and Wetzel had driven the car to Jackson, in order that he might obtain proper papers showing the transfer of title to the automobile to his mother, but he was unable to locate the person from whom his sister had purchased the car. The appellant stated that he and Wetzel had again left Gulfport on December 16 to return to Jackson, but when they reached Hattiesburg Wetzel told him to turn off the highway at Hattiesburg and drive to Meridian, where Wetzel thought he might get the money to make bond for Mrs. Archer's husband. When they arrived in the City of Laurel, Wetzel told the appellant to stop there, that he thought he might get the money in Laurel. The appellant stopped his car a short distance from the Jitney Jungle store and waited there until Wetzel returned with the paper bag containing the money.

The appellant did not testify during the trial and offered no evidence in his own behalf.

The first point argued by the appellant's attorneys as ground for reversal on this appeal is that the court erred in refusing to grant the peremptory instruction requested by the appellant at the conclusion of the State's evidence. It is contended that according to the testimony of the State's witnesses the appellant had no part in the actual commission of the crime, and that the State failed to prove a conspiracy between the appellant and Wetzel to commit the crime. It is also contended that the appellant's statement to the chief of police was consistent with the theory that the appellant was innocent of the crime charged against him.

But the rule is that, ''In order to be guilty of robbery, one need not necessarily be present at the commis-

sion of the crime, and persons absent from the scene of the robbery may be liable to prosecution therefor if they were particeps criminis before or after the commission of the robbery." 77 C. J. S., p. 470, Robbery, par. 32 b.

Section 1995 of the Mississippi Code of 1942 provides that "Every person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such; and this whether the principal have been previously convicted or not."

In the case of Gordon v. United States (C. C. A., 6th Ct.), 164 F. 2d 855, the Court held that one who furnished means to carry out jewelry robberies aided the robbers as truly as if he had been a present participant in each crime.

In the case of Lindsey v. State, 201 Ark. 87, 143 S. W. 2d 573, the Court held that the evidence that the defendant admitted driving his codefendants to a point near the scene of the robbery in the defendant's automobile and that the defendant remained with the automobile for approximately an hour while the crime was being committed was sufficient to establish the defendant's connection with the robbery aside from his codefendants' confessions, and warranted the conviction of the defendant as a principal. The Court in its opinion in that case said that the statement made by the appellant, which was admitted in evidence, lent strong support to the conclusion that the appellant did not tell all he knew, and the Court then added:

"Like the case of one found in the possession of property recently stolen, which the thief does not explain, the jury here may have concluded that appellant had acquired too little information for the opportunities afforded, and have believed so much of his own statement as placed him near the scene of the crime, while disbelieving his denial that he knew the crime was being committed while he was waiting at the car. It was not **essential that it be shown that appellant was present**

at the place of the actual commission of the crime. It is sufficient if he had conspired to commit it and had aided and abetted its commission by driving the robbers to the point where it could be and was committed, and we think the jury was warranted in finding that this was the only reasonable conclusion to be drawn from the facts herein recited.''

In the case that we have here, the appellant admitted to the chief of police that he had driven Wetzel in his own car (or the car that belonged to his mother) from the Gulf Coast to the City of Laurel, arriving there about nightfall, and that he had parked the car in a convenient place only a short distance from Lindsey's grocery store and had waited there while Wetzel committed the crime. He knew that Wetzel was armed and that Wetzel's purpose in making the trip to Meridian or Laurel was ''to see about getting some money up there.'' It is true that the appellant did not tell the chief of police that he had conspired with Wetzel to commit the crime of robbery in the City of Laurel. But the State was not required to prove an express agreement between the appellant and Wetzel to commit the crime of robbery. A criminal conspiracy may be proved by circumstantial evidence. In the case of Spight v. State, 120 Miss. 752, 83 So. 84, the Court said:

''The state, in establishing conspiracy, is never required to prove in express terms an agreement between the parties to do the unlawful act, but it is sufficient when the evidence reveals, from all the facts and circumstances, together with the acts of the parties, a common design or understood purpose between the parties to commit the crime.'' See also Hurd v. State, 137 Miss. 178, 102 So. 293; Riley et al. v. State, 208 Miss. 336, 44 So. 2d 455; Forman v. State, 220 Miss. 276, 70 So. 2d 848.

The State's theory of the case was that the appellant and Wetzel conspired together to rob the owner of the grocery store, and that the appellant knowingly aided

and abetted Wetzel in the commission of the crime. We think that the evidence was sufficient to warrant the submission of the case to the jury, and that the jury was justified in finding the appellant guilty as charged.

It is next contended on behalf of the appellant that the court erred in granting the first instruction for the State, which authorized the jury to convict the appellant as an actual participant in the commission of the crime. But a sufficient answer to that contention is found in Section 1995, Code of 1942, which has been quoted above. See also Watson v. State, 166 Miss. 194, 146 So. 122; Goss v. State, 205 Miss. 177, 38 So. 2d 700.

Where two or more persons act in concert to accomplish the common purpose of robbery, the act of one in taking the property is the act of all. People v. Madas, 201 N. Y. 349, 94 N. E. 857, Ann. Cas. 1912B, 229.

It is also argued that the above mentioned instruction was erroneous in that it failed to require that the jury believe "from the evidence" beyond a reasonable doubt that the defendant was guilty as charged in the indictment. But the omission of the words "from the evidence" in this instruction was cured by other instructions granted to the State and to the defendant.

It is also argued that the instruction was erroneous because it assumed that a robbery had been actually committed. But the evidence relating to the actual commission of the crime was undisputed, and there is no merit in this contention.

The appellant also complains of the second instruction given to the State, which is as follows:

"The Court instructs the Jury for the State that you do not have to know that the defendant is guilty but that it is only necessary for you to believe beyond a reasonable doubt from all the evidence in this case that the defendant is guilty as charged in the indictment before you are warranted in finding him guilty."

It is contended that the instruction is erroneous in that it failed to include, after the words, "beyond a reasonable doubt", the words, "and to the exclusion of every other reasonable hypothesis." But the error complained of in this instruction was cured by the instruction granted to the appellant, which appears on page 19 of the record, in which the jury was told that before they could convict the appellant they must believe from the evidence beyond every reasonable doubt that the appellant aided and abetted Wetzel in the commission of the crime, and that they must not only believe such beyond all reasonable doubt, "but you must also believe such to be true to the exclusion of every other reasonable hypothesis."

It is next argued that the court erred in granting the State's instructions 3 and 4, appearing on pages 13 and 14 of the record. But there was no error in the action of the court in granting those instructions. See Spright v. State, supra.

It is next argued that the court erred in refusing to grant an instruction requested by the appellant appearing on page 29 of the record, which would have required the jury to find the appellant not guilty unless they believed beyond all reasonable doubt that the appellant was driving the car in which Wetzel was riding prior to the commission of the crime. But we think that this instruction was properly refused. According to the appellant's statement to the chief of police, the automobile in which he and Wetzel were riding belonged to the appellant's mother who lived in the State of Texas. The appellant had possession and complete control of the car while it was in Mississippi; and if the jury believed from the evidence that the appellant accompanied Wetzel from the Gulf Coast to Laurel and aided and abetted in the commission of the crime, it was the duty of the jury to convict the appellant, even though the evidence may not have clearly shown whether the

appellant or Wetzel actually drove the car from the Gulf Coast to Laurel.

 It is finally contended that the court erred in permitting Henry Lindsey, Sr., Henry Lindsey, Jr., and Mrs. Pauline Lindsey to testify concerning the robbery itself before proof was made that a conspiracy existed between the appellant and Wetzel to commit the crime. But there is no merit in this contention for the reason that the State had a right to prove the corpus delicti at the outset, and then show who the perpetrators of the crime were.

We find no reversible error in the record and the judgment of the lower court is affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Lee* and *Holmes, JJ.,* concur.